Exhibit "A"

# NOTE

**Multistate**

FHA Case No.

January 25, 2013
*[Date]*

8230 QUINCY CT
FORT WAYNE, IN 46835
*[Property Address]*

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Fifth Third Mortgage Company

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Thirty Six Thousand Six Hundred Nineteen And Zero/100 Dollars (U.S. $136,619.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Three and three quarters percent ( 3.750 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on March 01, 2013 . Any principal and interest remaining on the first day of February, 2043 , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at P.O. Box 630170, Cincinnati, OH 45263 or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 632.70 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____________________(Seal) KENDRA R DELATORRE -Borrower

_____________________(Seal) -Borrower

_____________________(Seal) -Borrower

_____________________(Seal) -Borrower

*[Sign Original Only]*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

WITHOUT RECOURSE
PAY TO THE ORDER OF

FIFTH THIRD MORTGAGE COMPANY

BY: ______________________
Stephen Johnson, SVP

Exhibit "B"

2013008300
RECORDED: 02/05/2013 10:46:52 AM
JOHN MCGAULEY
ALLEN COUNTY RECORDER
FORT WAYNE, IN

Lawyers Title

Return To:

Fifth Third Mortgage Company
5001 Kingsley Drive, MD: 1MOCBQ
Cincinnati, OH 45227

[Space Above This Line For Recording Data]

State of Indiana

# MORTGAGE

FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on January 25, 2013. The Mortgagor is KENDRA R DELATORRE, a married woman

("Borrower"). This Security Instrument is given to Fifth Third Mortgage Company,

which is organized and existing under the laws of the state of Ohio, and whose address is 5001 Kingsley DR, MD: 1MOCBQ, Cincinnati, OH 45227 ("Lender"). Borrower owes Lender the principal sum of One Hundred Thirty Six Thousand Six Hundred Nineteen And Zero/100 Dollars (U.S. $136,619.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on February 01, 2043. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and

Lawyers Title

Recorded Electronically
ID 2013008300
County Allen
Date 2-5-13 Time 10:46:52
Simplifile.com 800.460.5657

Return To:

Fifth Third Mortgage Company
5001 Kingsley Drive, MD: 1MOCBQ
Cincinnati, OH 45227

[Space Above This Line For Recording Data]

State of Indiana

# MORTGAGE

FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on January 25, 2013. The Mortgagor is KENDRA R DELATORRE, a married woman

("Borrower"). This Security Instrument is given to Fifth Third Mortgage Company

, which is organized and existing under the laws of the state of Ohio, and whose address is 5001 Kingsley DR, MD: 1MOCBQ, Cincinnati, OH 45227 ("Lender"). Borrower owes Lender the principal sum of One Hundred Thirty Six Thousand Six Hundred Nineteen And Zero/100 Dollars (U.S. $136,619.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on February 01, 2043. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and

all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in Allen County, Indiana:
See Attached

Parcel ID Number: 1868199-
which has the address of 8230 QUINCY CT [Street]
FORT WAYNE [City], Indiana 46835 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be 

amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Initials:



(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting**

**a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

**20. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☐ Other [specify]
☐ Planned Unit Development Rider ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_______________________ Kendra R DelaTorre (Seal)
KENDRA R DELATORRE -Borrower

_______________________ _______________________ (Seal)
-Borrower

_______________________ (Seal) -Borrower _______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower _______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower _______________________ (Seal) -Borrower

[Space Below This Line For Notary Acknowledgment]

STATE OF INDIANA, Allen County ss:

On this 25th day of January, 2013, before me, the undersigned, a Notary Public in and for said County, personally appeared KENDRA R DELATORRE

and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

My Commission Expires: 9/21/19

NOTARY PUBLIC SEAL INDIANA

TRICIA LYNN MCKENNA, Notary Public
Allen County, State of Indiana
My Commission Expires September 21, 2019

Notary Public
County of Residence: Allen

This instrument was prepared by:

Balaram Ramachandra
Closing, Bangalore

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law.

Balaram Ramachandra
Balaram Ramachandra

691206202

**EXHIBIT A**

LOT NUMBERED 352, ARLINGTON PARK, SECTION VII, AS RECORDED IN PLAT RECORD 37, PAGES 9-13, IN THE OFFICE OF THE RECORDER OF ALLEN COUNTY, INDIANA.

2017012074
RECORDED: 03/03/2017 10:36:11 AM
ANITA MATHER
ALLEN COUNTY RECORDER
FORT WAYNE, IN

# Loan Modification Agreement

**Order No.:** [redacted]
**Loan No.:** [redacted]

**Recording Requested By and**
**When Recorded Return To:**
**ServiceLink**
**Loan Modification Solutions**
**3220 El Camino Real**
**Irvine, CA 92602**
**(800) 323-0165**

**Prepared By:** Brittnay Mustard
Fifth Third Bank
5001 Kingsley Road
Cincinnati, OH 45227

513-358-3270
PREPARED BY:
BRITTNAY MUSTARD

Top intentionally left blank.

FIFTH THIRD BANK

## LOAN MODIFICATION AGREEMENT

[redacted] Agreement (the "Agreement") is made on 2/1/2017, between KENDRA R DELATORRE ("Borrower(s)") and Fifth Third Mortgage Company ("Lender").

The parties recite and declare that:

a. Lender is the holder of a note made by Borrower(s), dated 1/25/2013 principal sum of One Hundred Thirty Six Thousand Six Hundred Nineteen Dollars and Zero Cents ($136,619.00) together with interest thereon at a fixed rate more fully set forth therein (the "Note").

b. The Note is secured by a Security Instrument bearing the same date (the "Security Instrument") that is recorded in the office of the ALLEN County Recorder's Office, in Book or Liber __________ and/or Instrument Number * 2013008300, at Page(s) ______, which covers and is now a lien on the property whose street address is 8230 QUINCY CT, FORT WAYNE, IN 46835 (the "Property"), and is further described in the Security Instrument and on Exhibit "A" attached hereto. * REC 2-5-13

c. Borrower(s) is/are now the owner(s) and holder(s) of the Property, on which the Security Instrument is a valid lien. There are no defenses or offsets to the Note or Security Instrument.

In consideration of the mutual promises and agreements exchanged, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree that, notwithstanding anything contained in the Note and Security Instrument to the contrary:

1. The amount payable under the Note as of 2/1/2017 (the "Unpaid Balance") is One Hundred Ten Thousand Five Hundred Eighty Three Dollars and Ninety One Cents ($110,583.91).

2. Borrower(s) promise(s) to pay to the order of Lender the Unpaid Principal Balance, plus interest thereon to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at a modified yearly rate of 3.125% from 2/1/2017. Borrower further agrees to pay to the order of Lender the Deferred Interest on the Maturity Date.

The parties also agree and acknowledge that as of 2/1/2017 the monthly payment of principal and interest due under the Note is Four Hundred Seventy Three Dollars and Seventy One Cents ($473.71). Borrower(s) will begin making monthly payments in this amount on 3/1/2017, and will continue to do so thereafter on the same day of each succeeding month until the Maturity Date as outlined in the original Note and Security Instrument. Borrower(s) acknowledges that the Note, as modified, is not payable in installments of equal amounts.

If on the Maturity Date of 2/1/2047, Borrower(s) still owes amounts under the Note and Security Instrument, as amended by this agreement, Borrower(s) will pay these amounts in full on the Maturity Date. If a financial hardship continues at this time, Borrower(s) may request a re-evaluation to determine if further modifications can be made.

Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp. Member FDIC. Mortgage products offered by Fifth Third Mortgage Company and Fifth Third Mortgage-MI, L.L.C. Equal Housing Lender
Modification Agreement FHA - Acct [redacted]

Page 1 of 3

Description: Allen,IN Document - Year.DocID 2017.12074 Page: 2 of 6
Order: delatorre Comment:

Borrower(s) will deliver all following payments to Fifth Third Mortgage Company, P.O. Box 630412, Cincinnati, OH 45263, or at such other place as Lender requires.

3. If all or part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower(s) is sold or transferred and the Borrower(s) is/are not a natural person(s)) without Lender's prior written consent, Lender may, at its option, require immediate repayment in full of all sums secured by this Security Instrument.

4. Borrower(s) also will comply with all other covenants, agreements, and requirements of the Note and Security Instrument, which are incorporated herein by reference, including without limitation, Borrower(s)' covenants and agreements to make all payment of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower(s) is/are obligated to make under the Security Instrument.

5. Borrower(s) understand and agree that:

a. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

b. All covenants, agreements, stipulations, and conditions contained in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrowers' obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lenders' rights under or remedies on the Note and Security Instruments, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c. Borrowers are presently in default under the terms of the Note and Security Instrument.

d. Borrowers have no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

e. Nothing in this Agreement shall be understood or construed to be satisfaction or release in whole or in part of the Note or Security Instrument.

f. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorneys' fees shall be paid by the Borrowers and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

g. Borrowers agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrowers.

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note or Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain in full force and effect and unchanged, and Borrower(s) and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp. Member FDIC. Mortgage products offered by Fifth Third Mortgage Company and Fifth Third Mortgage-MI, L.L.C. Equal Housing Lender
Modification Agreement FHA - Acct

Page 2 of 3

Description: Allen,IN Document - Year.DocID 2017.12074 Page: 3 of 6
Order: delatorre Comment:



[To be signed and dated by all borrowers, endorsers, guarantors, sureties, and other parties signing the Note and Security Instrument.]

Kendra R Delatorre 2/20/17

KENDRA R DELATORRE - Borrower Date

INDIVIDUAL ACKNOWLEDGMENT

STATE OF Indiana, COUNTY OF Allen ss.

Before me a Notary Public in and for said County and State personally appeared KENDRA R DELATORRE, who is/are personally known to me or have produced driver's license identification and who did take an oath and who executed the foregoing conveyance to Fifth Third Mortgage Company and severally acknowledged the execution thereof to be his/her free act and deed for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto affixed my name and official seal this 20th day of February, 20 17.

Dianna Dee Gaskill Com # 668875

Notary Public
My Commission Expires June 14, 2023

DO NOT WRITE BELOW THIS LINE. FOR FIFTH THIRD USE ONLY.

CORPORATE ACKNOWLEDGEMENT

**Melissa Jones**
**Officer**

FIFTH THIRD MORTGAGE COMPANY (Seal)

STATE OF OHIO, COUNTY OF HAMILTON ss.

Before me, a Notary Public in and for said County and State personally appeared Fifth Third Mortgage Company by MELISSA JONES, its OFFICER, the individual who executed the foregoing instrument and acknowledged that she/he did read the same and did sign the foregoing instrument and that the same is her/his free act and deed and the free act and deed of Fifth Third Mortgage Company.

IN WITNESS WHEREOF, I have hereunto affixed may name and official seal this 28 day of FEBRUARY, 20 17.

Shasta Taber

Notary Public
My Commission Expires 01/12/21

NOTARIAL SEAL STATE OF OHIO

Shasta Taber
Notary Public, State of Ohio
My Commission Expires 01-12-2021

Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp. Member FDIC. Mortgage products offered by Fifth Third Mortgage Company and Fifth Third Mortgage-MI. L.L.C. Equal Housing Lender
Modification Agreement FHA - Acct

Page 3 of 3

Description: Allen,IN Document - Year.DocID 2017.12074 Page: 4 of 6
Order: delatorre Comment:

**EXHIBIT A**

LOT NUMBERED 352, ARLINGTON PARK, SECTION VII, AS RECORDED IN PLAT RECORD 37, PAGES 9-13, IN THE OFFICE OF THE RECORDER OF ALLEN COUNTY, INDIANA.

# Effective July 1, 2006

I.C. 36-2-11-15, the following affirmation statement must be included on most documents to be accepted for recording in County Recorders' offices in the State of Indiana:

*"I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law.*

Melissa Jones
Officer

*[Signed, printed or stamped name of individual]"*

The following documents are exempt from the above requirement: Writ of a Court, Federal Tax Lien, Federal Lien Release, DD214, UCC. All other documents notarized in the State of Indiana (regardless of where they are prepared) require the affirmation statement. See I.C. 36-2-7.5 through I.C. 36-2-7.5-12 for a timeline of further requirements and implementation.